*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2021

Plaintiff-Appellee,

v

No. 353077
Wayne Circuit Court
LC No. 89-003478-04-FC

LATONYA RENEE HOBSON,

Defendant-Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's denial of her motion for relief from judgment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 1990, a jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), assault with intent to do great bodily harm less than murder, MCL 750.84, and breaking and entering an occupied dwelling with intent to commit a felony, MCL 750.110. The trial court sentenced defendant to concurrent prison terms of life imprisonment without parole for the murder conviction, 5 to 10 years for the assault conviction, and 7 to 15 years for the breaking and entering conviction. In a prior appeal, this Court affirmed defendant's convictions and sentences.[2]

This Court summarized the facts underlying defendant's convictions in its prior opinion as follows:

---

[1] See *People v Hobson*, unpublished order of the Court of Appeals, entered May 1, 2020 (Docket No. 353077).

[2] *People v Hobson*, unpublished per curiam opinion of the Court of Appeals, issued January 21, 1993 (Docket No. 131342).

The evidence in this case established that on February 18, 1989, [codefendant James T.] Mitchell voluntarily joined a group of people who were armed with weapons and searching for a drug dealer who had sold them brown sugar instead of cocaine. The group forced their way into a house owned by Robert Williams, the drug dealer's uncle, and threatened to kill him if he didn't tell them where to find his nephew. After Williams told them that he didn't know where his nephew was, Mitchell apparently told him that he would be back and "that if he didn't get his money that he would kill my whole family."

On February 19, 1989, a group of about eight people returned and broke into Williams' home. Mitchell directed one of the members that was with him to shot [sic] Williams in the leg. While this shooting was taking place, another member of the group, defendant Hobson, was beating Williams' wife and unidentified members were shooting to death the third occupant of the home, Dennis Newsome. Mitchell ordered that Williams be shot in the leg a second time just before the group left the house.

* * *

The evidence showed that the defendants, acting in concert, had a preconceived plan to exert whatever pressure was necessary to force the victims to divulge the whereabouts of the drug dealer for whom they were searching. This evidence also showed that [defendant] Hobson was instrumental in breaking into the victims' home and actively participated in the physical violence committed there.[3]

Before trial, defendant rejected the prosecution's offer to plead guilty to second-degree murder and receive a minimum sentence within the sentencing guidelines range of 10 to 25 years. As noted, the jury found defendant guilty of first-degree felony murder and the court sentenced her to life imprisonment without parole. Approximately 24 years later, in 2014, defendant filed a motion for relief from judgment, which the trial court denied. After this Court denied defendant's delayed application for leave to appeal,[4] our Supreme Court, in lieu of granting leave to appeal, remanded the case to the trial court for a *Ginther*[5] hearing. See *People v Hobson*, 500 Mich 1005 (2017).[6] After conducting a hearing, the trial court agreed that defendant's trial counsel had

---

[3] *Id*., unpub op at 3-4.

[4] *People v Hobson*, unpublished order of the Court of Appeals, entered July 8, 2016 (Docket No. 331921).

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] We note Chief Justice MARKMAN's concurring opinion, in which he (1) called for a "careful review of [the Supreme] Court's procedural rules, particularly as to whether there is merit in limiting the time within which a defendant may bring a motion for relief from judgment; and (2) encouraged the trial court to "carefully consider how defendant's delay in raising her claim affects

performed deficiently, but held that defendant had failed to establish actual prejudice under MCR 6.508(D) because she failed to show that it was reasonably likely that she would have accepted the 1989 plea offer but for counsel's improper advice.[7] The trial court therefore denied her motion for relief from judgment.

This appeal followed.

## II. DENIAL OF MOTION FOR RELIEF FROM JUDGMENT

Defendant argues that the trial court erred, in denying her motion for relief from judgment, by concluding that defendant had failed to establish a reasonable likelihood that she would have accepted the prosecution's plea offer if she had received proper advice from defense counsel. We disagree. We review for an abuse of discretion a trial court's decision on a motion for relief from judgment, and review for clear error the court's findings of fact supporting its decision. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *Id*. at 628-629 (citations omitted).

A claim alleging ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002); *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). This Court reviews de novo questions of law, and a trial court's findings of fact for clear error. *Id*.

"To demonstrate ineffective assistance of trial counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The defendant has the burden of establishing the factual predicate of his ineffective assistance of counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

## A. GENERAL LEGAL PRINCIPLES FOR RELIEF FROM JUDGMENT

"A defendant in a criminal case may move for relief from a judgment of conviction and sentence. MCR 6.502(A)." *Swain*, 288 Mich App at 629. Such motions are governed by MCR 6.500 *et seq*. "A defendant has the burden to establish entitlement to relief. MCR 6.508(D)." *Swain*, 288 Mich App at 630. When the defendant seeks such relief on grounds, other than jurisdictional ones, that could have been raised on appeal, the defendant must show "good cause" for the failure to raise such grounds earlier and "actual prejudice" as a result of the alleged irregularity. MCR 6.508(D)(3)(a) and (b). "The requirement of 'good cause' can be established

---

its evaluation of the claim on remand." *People v Hobson*, 500 Mich at 1005 (MARKMAN, C.J., concurring).

[7] We note that defendant's trial counsel passed away in 1993 and was therefore unavailable to testify.

by proving ineffective assistance of counsel." *Swain*, 288 Mich App at 631. As used in MCR 6.508(D), "actual prejudice," as relevant to this case, means:

> [W]here the defendant rejected a plea based on . . . ineffective assistance of counsel, it is reasonably likely that
>
> (1) the prosecutor would not have withdrawn any plea offer;
>
> (2) the defendant and the trial court would have accepted the plea but for the improper advice; and
>
> (3) the conviction or sentence, or both, under the plea's terms would have been less severe than under the judgment and sentence that in fact were imposed. [MCR 6.508(D)(3)(b)(i)(B).]

### B. GOOD CAUSE

Following the *Ginther* hearing, the trial court found that defendant did not receive the effective assistance of counsel because trial counsel presented incorrect legal arguments in the trial court, and gave deficient advice to defendant on the basis of those incorrect legal arguments, and that defendant's former appellate counsel was also ineffective in failing to raise an ineffective-assistance claim on direct appeal. The trial court's determination satisfied the good-cause requirement for a motion for relief from judgment. Because neither party has challenged the trial court's determination regarding her counsel's deficient performance, we leave it undisturbed.

### C. ACTUAL PREJUDICE

Defendant argues that the trial court erred by holding that she had failed to demonstrate actual prejudice resulting from her trial counsel's ineffectiveness. We disagree. To demonstrate prejudice with respect to ineffective assistance of counsel in the plea-bargaining process, a " 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Douglas*, 496 Mich at 592, quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). If, as in this case, the alleged prejudice results from the rejection of a plea offer,

> "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." [*Id.*, quoting *Lafler*, 566 US at 164.]

On the first day of trial, the prosecution informed the trial court that it had offered defendant a plea agreement: she would be permitted to plead guilty to second-degree murder, with dismissal

of the felony-murder charge,[8] and would receive a minimum sentence of 10 to 25 years.[9] At the *Ginther* hearing, defendant testified that, at the time of trial, she misunderstood the sentencing agreement portion of the offer, believing that the sentence range of 10 to 25 years referred to the minimum and maximum sentences, such that she would receive a minimum sentence of 10 years and a maximum sentence of 25 years. Instead, the actual offer was that she would receive a minimum sentence to be set by the trial court in the range of 10 and 25 years, and no maximum sentence was mentioned. Defendant testified that she did not accept the plea offer because her counsel advised her to reject it. Specifically, her counsel stated his belief that it was unlikely that she would be convicted of felony murder at trial. Defendant's husband also testified that he had understood the plea offer to represent the minimum and maximum number of years, and that trial counsel never explained to them that 10 to 25 years referred to the range of possible minimum sentences defendant could receive. Although defendant's trial attorney advised her to reject the offer, her husband advised her to accept it.

At the *Ginther* hearing, after extensive discussion with defendant to ensure that she now understood the plea offer correctly, the prosecution asked defendant a series of questions about whether she would have accepted the plea offer had she known that she could have received a minimum sentence as long as 25 years and a maximum sentence of life imprisonment (which the prosecution termed "twenty-five to life").[10] Defendant .gave several equivocal or negative responses:

---

[8] Felony murder constitutes first-degree murder. MCL 750.316(1)(b). The current mandatory sentence for an adult convicted of first-degree murder is life imprisonment without eligibility for parole. *Id*. At the time of defendant's conviction, the mandatory sentence for a conviction of first-degree murder was imprisonment for life, but the statute did not require the denial of parole eligibility. See MCL 750.316 as amended by 1980 PA 28; see also *People v Young*, 418 Mich 1, 4; 340 NW2d 805 (1983). However, the so-called "lifer law," MCL 791.234, excluded (and still excludes) persons convicted of first-degree murder from parole eligibility. See *People v Fernandez*, 427 Mich 321, 331 n 4; 398 NW2d 311 (1986). Therefore, a sentence of life imprisonment for first-degree murder was, in effect, nonparolable despite the absence of such language from MCL 750.136. MCL 750.316 was amended in 2014 to include a mandatory sentence of life imprisonment without the possibility of parole for first-degree murder. See 2014 PA 23.

[9] The sentence for second-degree murder, both currently and at the time of defendant's sentencing, is either life imprisonment or imprisonment for a term of years. MCL 750.317.

[10] The Legislature's imposition of a penalty of "life or a term of years" for a particular offense has been interpreted to refer to the maximum sentence for that offense—a trial court may impose a sentence that requires a defendant to serve a maximum of either a term of years or the defendant's lifespan, with the minimum sentence set by reference to the appropriate sentencing guidelines. If the court imposes a term of years sentence, it must then impose both a minimum term of years sentence and a maximum term of years sentence (rather than a life imprisonment sentence); while such a sentence may be lengthy, a defendant must be capable of serving it or becoming eligible for parole during his or her natural lifespan. MCL 769.9(2); see also *People v Moore*, 468 NW2d 487

*Prosecution:* In order to get that you have to have said that you would have taken it, that you would take it again today. And what I want for you to say is or understand that what was offered to you was a range where the Judge could have given you twenty-five to life. And I'm asking you would you still plead guilty to that if the Judge said I'm going to give you twenty-five to life?

*Defendant*: Well I don't know at that time because that life I don't— You know life means life, and I wouldn't have gave up my life.

\* \* \*

*Prosecution:* Your guidelines range on the bottom sentence is between ten and twenty-five years. And you're saying today that you would take a plea where you knew the Judge could give you twenty-five on the minimum?

*Defendant*: I'm not understanding how could I have got twenty-five on the minimum.

*Prosecution:* Because that was the offer, a guideline sentence where the guidelines were between ten and twenty-five years on the minimum sentence.

*Defendant*: Well yes, I would have took it if that's what [my attorney] would have advised me to take.

*Prosecution:* Okay. And you're saying today you would take that, too?

*Defendant*: Yes.

*Prosecution:* Okay. And now—

*The court*: And you'd take it with life in prison as the maximum, you'd take that?

*Defendant*: No, not with life.

\* \* \*

---

(1991). In other words, as we will discuss later in this opinion, had she accepted the plea offer, and had the trial court also accepted it, defendant could not, strictly speaking, have been sentenced to "25 to life" in the sense of a minimum sentence of 25 years and a maximum sentence of life; the imposition of a minimum sentence in the 10 to 25-year range would have required the trial court to impose a maximum sentence that was also a term of years. See *People v Harper*, 39 Mich App 134, 142-143; 197 NW2d 338 (1972) (holding that a sentence of 20 years to life was improper under MCL 769.9).

*The court*: Well let's, let— No, no. Back then if you knew it was 10 to twenty, ten to twenty five minimum to life in prison. Would you have taken that offer back then?

*Defendant*: With life on it, no.

Eventually, defense counsel obtained the following answer from defendant:

*Defense counsel*: Okay. Now there's been some discussion here about the upper end of your sentence being life, and I'm putting quotes around that because I want to ask you a question about that. If you had understood then that a potential sentence would have been twenty-five years to parolable life versus a sent—mandatory sentence of non parolable life, would you have picked the twenty-five years to parolable life?

*Defendant*: Yes, I mean I don't know because that life scares me, just life.

*Defense counsel*: Well you know you need to think about this. If you had correctly understood then what the parameters of the plea offer were versus what you would get if you were convicted of Felony Murder after a trial, which would you have chosen?

*Defendant*: I guess I would have took the twenty-five to life.

*Defense counsel*: You guess?

*Defendant*: Rather than—Yeah, rather than a mandatory life sentence and never getting out.

The record is clear that defendant made several equivocal or negative statements regarding whether she would have taken the plea offer had she understood it correctly. The trial court noted defendant's repeated inability to clearly state that she would have accepted the plea offer, noting that the most positive response defendant was able to give was "I guess."

On this record, there is no clear error in the trial court's determination that, based on defendant's own testimony, she did not demonstrate that she would have accepted the plea offer had she been effectively advised by trial counsel. *Lafler*, 566 US at 164. If defendant cannot even state unequivocally now, all these years later, that she would have accepted such an offer (which was far worse than the offer as she says she understood it at the time it was offered), it was not clear error for the trial court to find that she failed to show a reasonable probability that she would have accepted it at the time. Defendant has failed to demonstrate that trial counsel's advice caused

her actual prejudice.[11]  Consequently, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment on that basis.  *Swain*, 288 Mich App at 628.

### III.  DENIAL OF RECONSIDERATION

Defendant also argues that the trial court abused its discretion when it denied her motion for reconsideration and refused to later reopen the proofs to allow defendant to testify further.  We disagree.  We review for an abuse of discretion a trial court's decision whether to reopen proofs. *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001).  Again, "[a] trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law."  *Swain*, 288 Mich App at 628-629 (citations omitted).

Defendant argues, and the parties all agree, that she could not have actually received a sentence with a maximum term of "life" if her minimum sentence was a term of years.  See MCL 769.9(2).  ("If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof . . . . The court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.").  Defendant sought to reopen the proofs to so that she could testify about whether, had she correctly understood this, she would have accepted the plea offer.  Defendant offers a distinction without a difference.  To begin, the trial court could have refused to accept a plea agreement that denied it the option of imposing a sentence of life imprisonment.  MCL 750.317; see also *People v Killebrew*, 416 Mich 189, 206-207; 330 NW2d 834 (1982).  And even if the court were instead inclined to impose minimum and maximum term of years sentences, the maximum term of years sentence could have effectively been the equivalent of a life sentence (e.g., 150 years).  See *People v Rushlow*, 437 Mich 149, 156; 468 NW2d 487 (1991) (upholding a maximum sentence of 150 years considering the young age of the defendant and the possible effects of disciplinary credits and parole eligibility).[12]  There was no reason to reopen the proofs for defendant to speculate as to the longest term-of-years sentence she would have accepted, particularly when no maximum sentence had even been discussed as part of the plea negotiations.  The trial court's conclusion that defendant's testimony demonstrated her reluctance to agree to a sentence with the possibility of life imprisonment is equally applicable to a lengthy term-of-years sentence that would have been permissible under the plea agreement. Consequently, the trial court did not abuse its discretion by denying defendant's motion to reopen the proofs.  *Herndon*, 246 Mich App 371, 419.

Defendant also argues that, at the hearing on her motion for reconsideration, the trial court erred by indicating that the prosecution's plea offer was not "a real offer" if it did not include a maximum sentence.  We disagree that any error warrants relief.  There is no evidence in the record that the trial court made its determination to deny defendant's motion for relief from judgment based on a belief that the plea offer was invalid; in fact, to the extent the trial court formed such a

---

[11] Although not noted by the trial court, defendant also did not present any evidence demonstrating that it is reasonably likely that the former trial court would have accepted the proffered terms of any plea agreement.  See *Douglas*, 496 Mich at 592.

[12] Defendant in this case was 21 years old at the time of trial.

belief, it is clear that it formed it as a result of the parties' arguments on reconsideration. In sum, although the trial court, at subsequent hearing on reconsideration, made statements that were arguably incorrect concerning the validity of the 30-year old plea offer, this does not negate the trial court's earlier finding, after the *Ginther* hearing, that defendant had failed to carry her burden of proving actual prejudice under MCR 6.500. *Lafler*, 566 US at 163-164.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola